UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TERESA KLINGES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 2:19-cv-00418-NT |
| | ) |
| KEVIN POMERLEAU, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF'S MOTIONS TO EXCLUDE EXPERT WITNESS TESTIMONY AND TO STRIKE SUPPLEMENTAL EXPERT WITNESS DESIGNATION**

On May 5, 2022, I heard oral arguments on the Plaintiff's motions to exclude certain testimony of David E. Currier, the expert witness of Defendant Bergen & Parkinson ("**B&P**"), (ECF No. 123) and to strike B&P's supplemental expert witness designation (ECF No. 139). At the conclusion of those arguments, by oral order, I **DENIED** the motion to exclude and **GRANTED** the motion to strike (ECF No. 154). I write to provide an explanation for my oral ruling.

**FACTUAL BACKGROUND**

**I.    The Case**

This suit was brought by Teresa Klinges against her brother, Kevin Pomerleau, and B&P, a transactional law firm. Klinges and her brother jointly owned three companies, collectively known as the Global Companies. Second Am. Compl. ("**Compl.**") ¶¶ 1–2 (ECF No. 72). Klinges served as the Global Companies' chief financial officer. Compl. ¶ 21. In 2012, Klinges was fired from her managerial role in

the business, though she remained a minority shareholder. Compl. ¶ 22. After that, and without consulting Klinges, Pomerleau created a separate company, EVM MS, to acquire a sawmill to produce timber mats. Compl. ¶¶ 25–27. In a transaction (the "**Mill Transaction**") facilitated by B&P, Pomerleau obtained millions of dollars in loans from KeyBank National Association, Global Companies' primary lender, to finance EVM MS' operations, cross-collateralized using Global Companies' assets as security. Compl. ¶¶ 16, 27, 31, 33–34. Klinges claims that, after running up over $14 million in debt, EVM MS failed, which caused Global Companies to collapse soon after. Compl. ¶¶ 52–58.

Following the demise of Global Companies, Klinges sued Pomerleau for breach of his fiduciary duties (Counts I and II), and B&P for attorney malpractice and for aiding and abetting Pomerleau's breach (Counts IV, V, and VI). Compl. 13–21.

## II.   First Expert Witness Designation & *Daubert* Motion

On October 1, 2021, B&P served its Expert Witness Designation. B&P Expert Witness Designation 2 ("**First Expert Designation**") 9 (ECF No. 123-1). B&P's sole designee was David Currier, an attorney. First Expert Designation 1. Though the designation indicated that Currier was retained to testify on a number of issues, what is relevant here is his opinion on one particular item: that the Mill Transaction is not actionable as a conflicting-interest transaction under Maine law, and falls under the "safe harbor" provision of the Maine Business Corporation Act, because the Mill Transaction, "judged according to the circumstances at the relevant time, was fair." First Expert Designation 2. Specifically, the designation indicated that Currier would testify that the Mill Transaction "was fair in terms of Kevin Pomerleau and Greg

2

Pomerleau's dealing with the Global Companies and comparable to what might have been obtained in an arms-length transaction, in that, among other things, the April 15 transaction had the potential to benefit the Global Companies, in that EVM MS cross-guaranteed and cross-collateralized the supermajority of the then-current obligations of the Global Companies and provided strategic and supply chain advantages to the Global companies [sic] that they would not have otherwise had." First Expert Designation 5.

Klinges filed a motion to exclude Currier's testimony pursuant to Federal Rule of Evidence ("**Fed. R. Evid.**") 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Mot. to Exclude Certain Test. of David E. Currier, Esq. ("**Mot. to Exclude**") (ECF No. 123).

### III. Supplemental Expert Witness Designation & Motion to Strike

On February 28, 2022, almost three weeks after Klinges filed her motion to exclude Currier's testimony but before B&P had filed its response to that motion, B&P served a supplemental expert witness designation related to the scope of Currier's expected testimony. Def. B&P's Suppl. Expert Witness Designation ("**Supplemental Designation**") (ECF No. 139-1). The supplemental designation stated that all materials obtained during discovery "confirm[ed] . . . Mr. Currier's opinions as previously articulated in B&P's initial disclosure." Supplemental Designation 1. In addition, the supplemental designation provided Currier's opinion that the Mill Transaction was fair because the Global Companies "had a documented history of providing equity compensation to their executive employees" and that, "[g]iven the financial success of the Global Companies in 2014, it would have been

3

reasonable for Kevin Pomerleau to request (and for the Global companies to give) a significant equity-based compensation package." Supplemental Designation 2.

Klinges moved to strike the supplemental witness designation pursuant to Federal Rule of Civil Procedure ("**Fed. R. Civ. P.**") 26(e) and Fed. R. Civ. P. 37(c). Mot. to Strike Def. B&P's Suppl. Expert Witness Designation ("**Mot. to Strike**") (ECF No. 139).

## MOTION TO EXCLUDE

### I. Legal Standard

District courts act "as gatekeepers of expert testimony." *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 91 (1st Cir. 2014); *accord Daubert*, 509 U.S. at 597. Fed. R. Evid. 702 outlines the requirements for admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Importantly, however, "Rule 702 has been interpreted liberally in favor of the admission of expert testimony." *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006). The ultimate purpose of my inquiry "is to determine whether the

4

testimony of the expert would be helpful to the jury in resolving a fact in issue." *Cipollone v. Yale Indus. Prods., Inc.*, 202 F.3d 376, 380 (1st Cir. 2000).

## II. Discussion

Klinges argues that Currier's testimony is subject to exclusion for three reasons: (1) Currier "intends to improperly opine about ultimate legal issues," (2) "[h]e is patently unqualified to give testimony as to the 'fairness' of the Mill Transaction," and (3) "even if he was qualified, his opinion is not based on sufficient data, is not the product of reliable principles and methods, and it does not reflect his application of *any* recognizable methodology to the facts of the case." Mot. to Exclude 5–6. Below I analyze each of these arguments.

### A. Currier's Qualifications

I first address Klinges' argument that Currier is unqualified to give testimony as to the fairness of the Mill Transaction. "Among other requirements, Fed. R. Evid. 702 mandates that a putative expert be qualified to testify by knowledge, skill, experience, training or education. . . . That a witness qualifies as an expert with respect to certain matters or areas of knowledge, does not mean that he or she is qualified to express expert opinions as to other fields." *Levin*, 459 F.3d at 78 (internal quotation marks and citations omitted). "But experts come in various shapes and sizes; there is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field." *Santos v. Posadas de P.R. Assocs., Inc.*, 452 F.3d 59, 63 (1st Cir. 2006). "[E]xpertise is not necessarily synonymous with a string of academic degrees or multiple memberships in learned societies"; rather, in exercising my gatekeeping function, I must take into account "the value of 'extensive

5

practical experience.'" *Id.* at 63–64 (quoting *United States v. Hoffman*, 832 F.3d 1299, 1310 (1st Cir. 1987)).

In this case, Currier, the expert in question, holds a degree in Mathematics from Brown University and a J.D. from Harvard Law School. First Expert Designation 11. He has worked as an attorney since his graduation from Harvard and currently practices with his own firm, "a corporate and commercial practice." Mot. to Exclude 15 (quoting Dep. of David E. Currier, Esq. 31 (ECF No. 123–2)). Despite this general experience, the Plaintiff asserts that Currier lacks the specific expertise in "finance, economics, and business acumen" necessary to opine on the fairness of the Mill Transaction. Mot. to Exclude 16. I disagree. Though he may not be a specialist in this specific area of law and/or corporate finance, I find that Currier has sufficient general expertise in both areas to offer his opinion. *Cf. Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion Familiar*, 345 F.3d 15, 24 (1st Cir. 2003) ("The proffered expert physician need not be a specialist in a particular medical discipline to render expert testimony relating to that discipline."). Of course, the Plaintiff is "free to explore on cross-examination the limits of [Currier's] expertise and to offer countervailing expert opinions, if available, from witnesses with equal or more extensive training." *Hinton v. Outboard Marine Corp.*, 828 F. Supp. 2d 366, 372 (D. Me. 2011).

### B. Sufficiency of Facts and Data & Reliability of Methodology

I find Klinges' argument that Currier's testimony is subject to exclusion because it is not based on sufficient facts or data, and/or because it was not produced using a reliable methodology, equally unavailing.

6

First, in regard to facts and data, the Plaintiff asserts that, "[w]hile Currier considered pleadings, other expert designations, the [Maine Business Corporation] Act and related authorities and various deposition transcripts . . . , he did not consider a host of highly relevant information." Mot. to Exclude 18. It may be that there were other pertinent materials that Currier could have reviewed, but "[w]hen the 'adequacy of the foundation for the expert testimony is at issue, the law favors vigorous cross-examination over exclusion.' " *Zuckerman v. Coastal Camps, Inc.*, 716 F. Supp. 2d 23, 28 (D. Me. 2010) (quoting *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 119 (D. Me. 2010)); *accord Brown v. Wal–Mart Stores, Inc.*, 402 F. Supp. 2d 303, 308–09 (D. Me. 2005) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. . . . It is only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury [that] such testimony [must] be excluded on foundational grounds." (internal citations and quotation marks omitted)). "If the factual underpinnings of [the experts'] opinions [are] in fact weak, that [is] a matter affecting the weight and credibility of their testimony," not admissibility. *Payton v. Abbott Labs*, 780 F.2d 147, 156 (1st Cir. 1985).

Similarly, I find the Plaintiff's critique of Currier's methodology unconvincing as a ground for exclusion. As this Court has previously stated, "[e]xpert testimony need not be based on hard science. Rule 702 also permits testimony by 'skilled' witnesses based on experience because 'in certain fields, experience is the

7

predominant, if not sole, basis for a great deal of reliable expert testimony.' " *United States v. Raymond*, 700 F. Supp. 2d 142, 145–46 (D. Me. 2010) (quoting Fed. R. Evid. 702 advisory committee's note). Here, to the extent that Currier relies on his experience as a basis for his testimony, I decline to say that such reliance renders Currier's opinion inadmissible. Currier's testimony might have benefitted from further background research, and the Plaintiff will be free to expose this and any other weaknesses in Currier's testimony during cross-examination. But these alleged weaknesses are not grounds for exclusion.

### C.     Legal Conclusions

Finally, I turn to Klinges' argument that Currier's opinion that "the [Mill] Transaction did not . . . appear to constitute a conflicting interest transaction under the [Maine Business Corporation] Act because the [Mill] Transaction falls within a safe harbor defined by the Act" constitutes an improper legal conclusion. Mot. to Exclude 13–14 (footnote omitted) (quoting First Expert Designation 5). "In our legal system, purely legal questions and instructions to the jury on the law to be applied to the resolution of the dispute before them is exclusively the domain of the judge. Accordingly, expert testimony on such purely legal issues is rarely admissible." *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997); *see also id.* at 100 ("Because the jury does not decide . . . pure questions of law, such testimony is not helpful to the jury and so does not fall within the literal terms of Fed. R. Evid. 702, which allows expert testimony '[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."). However, there are "particular areas of law, such as legal malpractice, where

8

expert testimony on legal matters is admissible where it would normally be excluded." *Id.* at 100–101.

The Plaintiff concedes that Currier's opinion regarding the applicability of the safe harbor may be admissible insofar as it pertains to Counts IV and V of Klinges' Complaint, which both allege attorney malpractice against B&P. Reply in Supp. of Mot. to Exclude 1 & n.2 (ECF No. 140). Thus, I find that Currier's opinion, as it relates to the legal malpractice claims, is admissible under Fed. R. Evid. 702.

The closer question is whether Currier may offer his opinion as to Count VI, which alleges that B&P aided and abetted Kevin Pomerleau's breach of fiduciary duty. *See* Compl. ¶ 100. The Plaintiff asserts that, in the context of her aiding and abetting claim, "[t]estimony by Mr. Currier opining that Kevin did not breach his fiduciary duties to Teresa . . . because the Mill Transaction was 'fair to the corporation' under the Section 872(2)(C) safe harbor would be entirely inadmissible." Reply in Supp. of Mot. to Exclude 2. While I understand that Count VI of Klinges' Complaint does not state a legal malpractice claim, I am not convinced that Currier's opinion is, by default, *entirely* inadmissible with regard to that Count. As the First Circuit has explained, expert opinions on "complicated subject[s]" may be admissible where they can "shed some light in a shadowy domain." *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990); *see also United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("[C]ourts and commentators have consistently concluded that expert testimony that ordinarily might be excluded on the ground that it gives legal

9

conclusions may nonetheless be admitted in cases that involve highly technical legal issues.").

Here, Count VI of Klinges' complaint entails not just a basic aiding and abetting issue, but also the more technical legal issue of whether B&P "knew, or should have known, that the Mill Transaction was an interested party transaction requiring approval of the sole disinterested shareholder." Compl. ¶ 98. This is arguably the very type of "highly technical legal issue" on which expert testimony is admissible.

It is also notable that one of the Plaintiff's expert witnesses, Fred W. Bopp, is slated to opine on the exact same issue that the Plaintiff calls an impermissible legal issue in the instant motion—that is, that "B&P knew or should have known that none of the 'safe harbors' regarding director's conflicting-interest transactions . . . were applicable in[ ] connection with the Mill Transaction, in that . . . the Mill Transaction was not fair." Pl.'s Suppl. Expert Witness Designation 11 (ECF No. 134-1). From what I can gather, the only difference between Bopp's opinion and Currier's is that Bopp believes the Mill Transaction does not fall into a safe harbor, while Currier believes it does. And, at oral argument, when pushed on whether there is a substantive difference between the Bopp and Currier opinions beyond their divergent conclusions, counsel for the Plaintiff argued only that Bopp possessed the requisite qualifications to make such opinions, which is an entirely different basis for exclusion.

Ultimately, I decline to say at this stage that Currier may not opine at all on any issues relevant to Count VI. I do wish to emphasize, however, that though

10

Currier's opinion may be admissible as to highly technical legal questions, such as the standard of care required of B&P and the applicability of the safe harbor provision, my ruling here should not be taken as a carte blanche for either party to introduce expert testimony on any and all legal issues. Should either party's expert stray into the exclusive domain of the judge, either in the forthcoming summary judgment motions or at trial, the other side may lodge an objection at that time.

## MOTION TO STRIKE

### I. Legal Standard

Fed. R. Civ. P. 26 requires that expert witnesses, at a date set by the court, disclose to the opposing party "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 26 also creates a duty for parties to supplement prior expert witness disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)–(2). Under Fed. R. Civ. P. 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

### II. Discussion

Klinges argues that Currier's supplemental expert witness designation should be stricken because it is not properly considered a supplement under Fed. R. Civ. P. 26, and because preclusion is appropriate under Fed. R. Civ. P. 37. I agree.

11

"Supplementation as contemplated by Rule 26 is a method of 'correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Me. Med. Ctr. v. William A. Berry & Son, Inc.*, 2:16-cv-00052-JDL, 2017 WL 1411478, at *2 (D. Me. Apr. 20, 2017) (quoting *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998)). Here, by B&P's own admission at oral argument, the supplemental designation neither corrects any inaccuracy nor fills in gaps based on new information. Thus, neither justification for supplementation applies and I must consider whether preclusion is the proper remedy under Fed. R. Civ. P. 37.

"[A]lthough [Rule 37] sanctions can vary depending on the circumstances, 'the baseline rule is that the required sanction in the ordinary case is mandatory preclusion.'" *Harriman v. Hancock Cnty.*, 627 F.3d 22, 29, (1st Cir. 2010) (quoting *Santiago–Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006)). The factors used to analyze whether a failure to disclose is substantially justified or harmless include:

> (1) the history of the litigation; (2) the sanctioned party's need for the precluded evidence; (3) the sanctioned party's justification (or lack of one) for its late disclosure; (4) the opponent-party's ability to overcome the late disclosure's adverse effects—e.g., the surprise and prejudice associated with the late disclosure; and (5) the late disclosure's impact on the district court's docket.

*Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009). "The burden is on the party that has failed to comply with discovery deadlines to establish that his failure is harmless or substantially justified." *U.S. Bank Nat'l Ass'n v. James*, Civil No. 09-84-P-JHR, 2010 WL 1416126, at *6 (D. Me. Apr. 5, 2010).

Here, B&P has not met its burden of proving that its failure to timely disclose Currier's opinion regarding equity compensation was harmless or substantially justified. First, the history of litigation shows that discovery closed on December 27, 2021, and B&P waited two months to file its supplemental designation. Second, B&P has not presented evidence that the supplemental opinion is necessary to its case. Third, B&P has offered no compelling justification for its supplement. Rather, counsel for B&P admitted during oral arguments that its supplemental designation was *not* based on any information that wasn't already available to Currier at the time of the original designation in October of 2021. Fourth, the Plaintiff would suffer prejudice if B&P were allowed to use Currier's supplemental opinion in its defense. Klinges relied on the original designation in drafting her motion to exclude, planning for summary judgment practice, and engaging in settlement negotiations. If I were to deny the motion to strike, it would, at the very least, force Klinges to amend her motion to exclude and to reopen discovery so that Currier's deposition could be re-taken. Finally, and perhaps most importantly, allowing the supplemental designation would have a considerable impact on this Court's docket, delaying an already years-old case even further. Taken together, the *Esposito* factors point to preclusion. Thus, the motion to strike is granted.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the motion to exclude (ECF No. 123) and **GRANTS** the motion to strike (ECF No. 139).

SO ORDERED.

                                                 /s/ Nancy Torresen
                                                 United States District Judge

Dated this 11th day of May, 2022.